IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CARDINAL HEALTH 200, LLC,

        **Plaintiff,**

    v.                             **Civil Action 2:24-cv-3901**
                                          **Judge Edmund A. Sargus, Jr.**
                                          **Magistrate Judge Jolson**

CELLEX, INC.,

        **Defendant.**

## OPINION & ORDER

Plaintiff's Motion for Sanctions (Doc. 30) and Defendant's Motion to Compel (Doc. 38) are before the Court.  For the following reasons, Plaintiff's Motion is **DENIED**, and Defendant's Motion is **GRANTED in part** and **DENIED without prejudice in part**.  The Court also **LIFTS** the stay of the discovery and dispositive motion deadlines and **SETS** new case deadlines.

## I.    BACKGROUND

Plaintiff's Complaint contains few factual details.  As alleged, on April 8, 2020, Plaintiff and Defendant agreed that Plaintiff would purchase bulk orders of SARS-COV-2 Rapid Test kits ("COVID-19 tests") from Defendant.  (Doc. 2 at 2, ¶ 1)[1].  Plaintiff alleges that some of the tests "contained defects in contravention of the [parties'] Agreement, causing Plaintiff to return the Products to [Defendant]."  (*Id.* at ¶ 6).  Under the agreement, Plaintiff says that Defendant was responsible for expenses "associated with Product noncompliance and corrective action."  (*Id.* at ¶¶ 7–8).

On unspecified dates, Plaintiff returned some COVID-19 tests to Defendant because they

---

[1] The Complaint contains two paragraphs numbered one and two.  (*See* Doc. 2 at 1–2).  Here, the Court refers to Paragraph 1 on the second page of the Complaint.

did not comply with product standards and because Defendant lost "its Emergency Use Authorization with the U.S. Food and Drug Administration ("FDA")."  (*Id.* at ¶¶ 9–10).  After those returns, however, Plaintiff alleges that Defendant failed to reimburse it.  (*Id.* at ¶¶ 11–14).  All told, Plaintiff alleges that Defendant owes $432,058.80.  (*Id.* at ¶ 15).

Also in April 2020, Defendant alleges it received several purchase orders from Plaintiff for more COVID-19 tests.  (Doc. 21 at ¶ 6).  The next month, Defendant shipped 50,700 tests to Plaintiff's warehouse in Chicago, Illinois.  (*Id.* at ¶ 7).  Although the tests "had a contracted value of $1,267,000," Plaintiff never paid.  (*Id.* at ¶¶ 9–10).  Then, in the summer of 2020, Plaintiff began sending Defendant "separate purchase orders to drop ship Tests directly to its customers."  (*Id.* at ¶ 11).  To date, Defendant says, Plaintiff has not fully paid for those tests either.  (*Id.* at ¶¶ 11–12).  Finally, in November or December 2020, Plaintiff returned some tests to Defendant that "appeared to be damaged," but Plaintiff did not provide Defendant "any evidence supporting a contention that any of the Tests were defective."  (*Id.* at ¶¶ 13–14).

On June 20, 2024, Plaintiff sued Defendant in the Franklin County, Ohio, Court of Common Pleas for breach of contract.  (Doc. 1 at ¶ 2).  Defendant removed the case to this Court on August 30.  (*Id.* at ¶ 5 (stating the Court can hear this case under its diversity jurisdiction) (citing 28 U.S.C. § 1332)).  On November 1, Defendant filed counterclaims against Plaintiff for breach of contract, unjust enrichment, and promissory estoppel.  (Doc. 21 (Defendant's Amended Counterclaim); Doc. 20 (granting Defendant permission to file the amended counterclaims with Plaintiff's consent)).  The Court set the deadline for discovery to May 16, 2025, and the deadline for dispositive motions to June 20, 2025.  (Doc. 8).

The parties did not meet those deadlines, in part, because of discovery disputes.  Plaintiff first contacted the Court on April 22, 2025, about spoliation issues.  (*See* Docs. 23, 24).  The Court

ordered the parties to confer and set a discovery conference. (Doc. 24). However, after that, the parties appeared to make some progress. (*See* Doc. 24 (status report on the disputes)). So, the Court vacated the discovery conference and extended the discovery and dispositive motion deadlines to July 16, 2025, and August 20, 2025, respectively. (Docs. 25, 27).

Once more, the parties did not complete discovery on time. Instead, on June 5, 2025, Plaintiff filed a Motion for Sanctions based upon Defendant's alleged destruction of returned COVID-19 tests. (Doc. 30). More specifically, Plaintiff complained that Defendant destroyed the very COVID-19 tests that form the basis of its counterclaims. (*Id.* at 3–4). Three weeks later, Defendant filed a Motion to Compel Plaintiff to provide certain discovery or to certify that no responsive materials existed. (Doc. 38). The Court expedited briefing (Doc. 40), but these disputes still made the case schedule impracticable. Consequently, on June 27, the Court stayed the discovery and dispositive motion deadlines. (*Id.*). Even so, the Court noted that the parties were scheduled to mediate the case on July 29 and ordered them to do so, regardless of whether the discovery motions were resolved by that date. (*Id.* at 1–2). On August 1, the parties reported that after a two-hour mediation, they did not resolve the case. (Doc. 51).

Plaintiff's Motion for Sanctions (Docs. 30, 34, 41) and Defendant's Motion to Compel (Docs. 38, 46, 50) are now ripe for consideration.

## II.    STANDARD

Although both parties raise preservation of evidence issues, different rules and principles apply. When a party destroys evidence, as Plaintiff alleges, the Court may impose a spoliation sanction under its "inherent powers." *Automated Sols. Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 513 (6th Cir. 2014). Such sanctions may include "dismissing a case, granting summary judgment, or instructing a jury that it may infer a fact based on lost or destroyed evidence." *Adkins*

*v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009). Whatever sanction a court imposes "should serve both fairness and punitive functions," *id.*, and be tailored to account for the party's culpability in destroying evidence. *Automated Sols. Corp.*, 756 F.3d at 513 ("The severity of a sanction often depends on the party's fault.").

Because Plaintiff seeks an adverse inference instruction (Doc. 30 at 1), it "must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Beaven v. U.S. Dep't of Just.*, 622 F.3d 540, 554 (6th Cir. 2010) (citation modified). In other words, Plaintiff must show that Defendant "knew the evidence was relevant to some issue at trial and . . . their culpable conduct resulted in its loss or destruction." *Id.* (citation modified).

Meanwhile, two rules govern Defendant's Motion to Compel. (Doc. 38). Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 37, for its part, provides relief when a party fails to answer interrogatories submitted under Rule 33, provide proper responses to requests for production of documents under Rule 34, or offer deposition testimony under Rule 30. *See* Fed. R. Civ. P. 37(a)(1), (3). "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted). "While relevancy is broad, 'district courts have discretion to limit the scope of discovery [when] the information sought is overly broad or would prove unduly burdensome to produce.'" *Plain Local Sch. Dist. Bd. of Educ. v. DeWine*, 335 F.R.D.

4

115, 119 (N.D. Ohio 2020) (alteration in original) (quoting *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)). At base, "the scope of discovery is within the sound discretion of the trial court." *Stumph v. Spring View Physician Practices*, LLC, No. 3:19-CV-00053-LLK, 2020 WL 68587, at *2 (W.D. Ky. Jan. 7, 2020) (quotation marks and citations omitted).

## III. DISCUSSION

Both sides accuse the other of not fulfilling its discovery obligations. Plaintiff asserts that Defendant destroyed the very COVID-19 tests underlying its counterclaims. (Doc. 30). Consequently, Plaintiff seeks an adverse inference instruction that the destroyed tests "were not damaged and were salable" and an order prohibiting Defendant from relying on the tests to support any claim or defense. (*Id.* at 9). Meanwhile, Defendant says that Plaintiff is withholding relevant documents and did not adequately prepare its witness for depositions. (Doc. 38). Defendant wants an order compelling Plaintiff to produce documents, hold additional depositions, and pay the costs and fees for those depositions. (*Id.* at 15). In the end, the Court finds that only Defendant's Motion has merit.

### A. Plaintiff's Motion for Sanctions

As noted, to warrant an adverse inference instruction for spoliation, Plaintiff must show Defendant had an obligation to preserve the COVID-19 tests when they were destroyed; that Defendant destroyed them "with a culpable state of mind"; and that the destroyed tests were relevant to Plaintiff's breach of contract claim. *Beaven*, 622 F.3d at 553. Plaintiff's Motion fails at the very first step. Plaintiff does not establish Defendant had a duty to preserve the tests when Defendant destroyed them in November 2022.

A party's obligation to preserve evidence is triggered "when the party 'has notice that the

evidence is relevant to litigation or should have known that the evidence may be relevant to future litigation.'" *Design Basics, LLC v. Mitch Harris Bldg. Co., Inc.*, No. 16-14019 2021 WL 5563981, at *4 (E.D. Mich. Nov. 29, 2021) (quoting *John B. v. Goetz*, 531 F.3d 448, 459 (2008)). In other words, although the duty to preserve certainly starts once a lawsuit is filed, it can arise sooner. *Harvis v. Overton Cnty.*, No. 2:22-cv-00011, 2023 WL 8604139, at *7 (M.D. Tenn. Dec. 12, 2023). "If a reasonable party in the same factual circumstances would have reasonably foreseen litigation" from the party seeking evidence, the duty to preserve attaches. *Id.* (citation modified); *see also Design Basics, LLC*, 2021 WL 5563981, at *4 ("[T]he duty to preserve arises when the party in possession of the evidence knows that litigation by the party seeking the evidence is pending or probable."); *O'Brien v. Donnelly*, No. 2:04-cv-85, 2010 WL 3860522, at *6 (S.D. Ohio Sept. 27, 2010) (stating a spoliation sanction requires more than just speculation about future litigation). Otherwise, if there was "no notice of pending litigation, the destruction of evidence does not point to consciousness of a weak case and intentional destruction." *Beaven*, 622 F.3d at 553–54 (citation modified).

Up front, the Court notes that Plaintiff's Motion is vague. For instance, Plaintiff does not describe the destroyed tests or offer a timeline. (*See* Doc. 30 at 4 (saying only that Defendant informed Plaintiff the tests were destroyed six months after September 6, 2024), 5 (discussing a deposition and Defendant's counterclaims, but providing no concrete timeline of events)). Consequently, the Court relies on Defendant's factual summary, which Plaintiff seemingly does not dispute. (Doc. 41 at 1–4 (challenging no part of Defendant's timeline of events); *cf.* Doc. 41 at 2 (contesting only Defendant's representation that photographs were taken of the allegedly damaged tests)).

According to Defendant, on April 30, 2020, Plaintiff issued to Defendant Purchase Order

No. 4528962924 ("924 PO") for five units of 10,000 tests. (Doc. 34-1 at 1; Doc. 34-5 at 13–18 (924 PO)). Defendant fulfilled that purchase order the next month and issued an invoice, which Plaintiff never paid. (Doc. 34-1 at 1; Doc. 34 at 2). On May 18, Plaintiff contacted Defendant, notified it that some of the tests were damaged, and asked to return them. (Doc. 34 at 3; Doc. 34-2 at 5). In August 2020, Plaintiff returned the tests, and Defendant photographed "what it believed to be the damaged tests." (Doc. 34 at 3; *cf.* Doc. 45 at 2 (claiming an employee "admitted she failed to take any photographs of the exterior of the boxes holding the allegedly damaged tests"); Doc. 34-4 at 10–11, 13, 15–17 (photographs of the insides of the boxes and the boxes containing the tests)). After that, the tests remained in Defendant's warehouse for some time. (Doc. 34 at 3).

In late 2021, Defendant stopped fulfilling purchase orders from Plaintiff due to changes in the COVID-19 testing marketplace. (*Id.* at 4). On December 7, 2021, Defendant withdrew its agreement with the FDA and began looking for a vendor to destroy its remaining tests that were damaged, expired, or not FDA-authorized for distribution. (*Id.* at 2; *see also* Doc. 34-1 at 1–2). Finally, in late 2022, Defendant contracted with a vendor, who destroyed the tests "on or about" November 15, 2022. (Doc. 34 at 4). Yet, between August 2020 and April 2023, Plaintiff did not contact Defendant about any issues related to this order. (*Id.*).

On April 27, 2023—nearly three years after Plaintiff returned the tests—Plaintiff contacted Defendant. (*Id.*; Doc. 34-5 at 35–36). Even then, Plaintiff did not mention the August 2020 return specifically. Instead, Plaintiff asked for an "unsuppressed statement" of Defendant's account "for reconciliation purpose[s]." (Doc. 34-5 at 35–36; *see also id.* at 33–35 (follow-up emails from Plaintiff dated May 2, 2023; May 4, 2023; and May 21, 2023); Doc. 34 at 4). In other words, Plaintiff sought information to see whether Plaintiff or Defendant owed each other money. (Doc. 34-5 at 33–35; Doc. 34 at 4). Eventually, in late 2023 or early 2024, Plaintiff contacted Defendant

again, issued an invoice, and notified Defendant that it owed Plaintiff for the August 2020 return. (Doc. 34-5 at 37–38 (emails beginning in November 2023, referencing various credit amounts and phone calls between Plaintiff and Defendant)).

On this record, the Court cannot say that any reasonable party would have foreseen litigation in November 2022 when Defendant destroyed the tests. *Harvis*, 2023 WL 8604139, at *7. Plaintiff returned the tests in August 2020 but apparently failed to contact Defendant about any related issues for at least three years. (Doc. 34-5 at 35–36). And Plaintiff didn't file this lawsuit until June 20, 2024. (Doc. 1 at ¶ 1). Meanwhile, Defendant's vendor destroyed the tests in November 2022—five months before Plaintiff first emailed Defendant to reconcile its finances, a year before Plaintiff told Defendant that it owed Plaintiff money for the return, and a year-and-a-half before this lawsuit was filed. *See Perryman v. Postmaster Gen.*, 475 F.App'x 585, 588–89 (6th Cir. 2012) (finding no duty to preserve where an individual discarded notes before he received a form instructing that all notes should be saved for a year, and he was otherwise not on-notice of pending litigation or an investigation); *Applebaum v. Target Corp.*, 831 F.3d 740, 745 (6th Cir. 2016) (affirming denial of an adverse inference instruction where sign-in sheets were disposed of "weekly or even daily" and where the defendant had "no notice of potential litigation" until months later); *Ross v. Am. Red Cross*, 567 F. App'x 296, 299–300, 302–03 (6th Cir. 2014) (concluding the defendant was not on-notice of possible litigation when records were lost in January 2009 because the defendant did not receive a letter from the plaintiff's attorney until two months later).

Still, Plaintiff says Defendant should have known litigation was possible before November 2022. As support, Plaintiff points to Defendant's Amended Counterclaim, which seeks $1.3 million in damages for Plaintiff's failure to pay for the returned tests. (Doc. 45 at 2; Doc. 21). Specifically, Plaintiff says that "[i]t is not plausible that [Defendant] would simply walk away

from that amount in damages," and Defendant "knew or should have known that either Defendant would be asserting a claim for the damaged tests or that [Plaintiff] would be requesting refunds related to returned tests."  (Doc. 45 at 2).

This assertion, however, is speculative.  Neither party suggests that Defendant contemplated bringing its own lawsuit before Plaintiff filed this action in June 2024.  In fact, some emails between the parties suggest Defendant had "writ[ten]-off . . . the loss."  (Doc. 34-5 at 33 (email from Defendant to Plaintiff in February 2024)).  Further, Plaintiff presents no evidence that Defendant even knew of financial discrepancies related to the August 2020 returns until late 2023 or early 2024, or that Defendant anticipated that such discrepancies would lead to this litigation. *See Siefert v. Hamilton Cnty. Bd. of Comm'rs*, No. 1:17-cv-511, 2021 WL 5918893, at *3 (S.D. Ohio Dec. 15, 2021) (finding no duty to preserve evidence existed based upon an email that discussed the possibility of a custody proceeding, not the larger civil rights case that eventually arose).  Elsewhere, Plaintiff admits that neither party contemplated litigation between 2020 and 2022.  (Doc. 46 at 12 (pointing to testimony saying Plaintiff deleted records under a retention policy from 2020–2022 and that the records were "subjected to [Plaintiff's] automatic records retention policy before any litigation was filed or contemplated")).

Simply put, Plaintiff presents nothing to show that Defendant should have reasonably anticipated litigation between August 2020, when Plaintiff returned the tests, and November 2022, when Defendant's vendor destroyed the tests.  As a result, Defendant had no duty to preserve the tests at the time they were destroyed.  Plaintiff's Motion for Sanctions (Doc. 30) is **DENIED**.

### B.    Defendant's Motion to Compel

For its part, Defendant seeks "four categories of documents and information": (1) documents and information about Plaintiff's purchases of tests from Defendant, including

purchase orders and related communications; (2) documents, communications, and information about Defendant's delivery of those tests to Plaintiff; (3) documents and information about returned tests, including identification of damages, return authorizations, proof of shipments, and related communications; and (4) documents and information related to Plaintiff's payments for tests.  (Doc. 50 at 1–2).  In response, Plaintiff says it either has produced enough or that additional documents and information do not exist.  (Doc. 46).  The Court disagrees and finds Plaintiff must do more to fulfill its discovery obligations.

*1.      Documents and Information About Orders and Returns*

The Court begins with Defendant's document requests.  As noted, the Complaint alleges that Plaintiff returned some COVID-19 tests because they were damaged and that the parties' agreement obligates Defendant to pay for costs associated with those returns.  (Doc. 2 at ¶¶ 6–14).  As litigation progressed, Plaintiff also raised new allegations for returns related to packaging issues and marketplace demand.  (Doc. 46 at 3). Defendant requested documentation relevant to the returns.

Now, Defendant asserts Plaintiff's discovery responses fell short.  (Doc. 38 at 4 (noting Defendant expected purchase orders, communications related to orders, receipts, documents explaining how tests were damaged, proof of shipment, and documents related to payment)).  As a result, Defendant asks to compel Plaintiff to "identify and produce documents related to its purchase of Tests," "delivery of the tests," "return of the Tests," and "payment for the Tests and/or any credit for returned Tests."  (*Id.* (listing corresponding discovery requests); *see also* Doc 38-2 at 15–21, 23–29 (discovery requests and Plaintiff's responses)).  Plaintiff responds that it has produced all the responsive documents it has, and any other responsive materials were destroyed pursuant to Plaintiff's automatic retention policies.  (Doc. 46 at 2, 7, 9).

While true that a court cannot order a party to produce documents that do not exist, *Waskul v. Washtenaw County Community Mental Health*, 569 F.Supp.3d 626, 639 (E.D. Mich. 2021), the documents produced bely Plaintiff's assertion. For instance, while Plaintiff claims to have made at least 11 return shipments to Defendant, Plaintiff has produced only "a small number of documents" for "a single return." (Doc. 38 at 6; *see* Doc. 46 at 8 (spreadsheet saying 11 returns occurred)). Further, Plaintiff has produced five spreadsheets to Defendant, "including a sheet that provides detailed return codes related to each and every test" it returned. (Doc. 46 at 4; *see also id.* at 8 (screenshot of part of one spreadsheet)). Plaintiff does not explain how it created the spreadsheets if documents were indeed lost under its retention policy. (*Id.* at 4, 8). Nor has Plaintiff produced the sources used to create the spreadsheets. (Doc. 50 at 2). Though Plaintiff claims many email communications were also destroyed under its retention policy, it has produced some emails dating back to 2020. (Doc. 50 at 2; *see also id.* at n.1 (discussing contradictory deposition testimony on emails, archiving, and associated retention policies)).

Inconsistencies also plague Plaintiff's representations about the specifics of its retention policies. For example, one of Plaintiff's witnesses, Daniel Romain, testified that when orders and returns occurred, Plaintiff generated documents and emails regarding those orders, as well as related payments. (Doc. 38-2 at 2–3 (discussing Plaintiff's "SAP system" for generating orders and that accounts payable would have payment documentation)). That same witness testified that Plaintiff put litigation and retention holds in place at some time. (*Id.* at 5 (agreeing that at some point "from April of 2020 to the present," Plaintiff "suspend[ed] or disable[d]" retention periods for emails between Plaintiff and Defendant); *see also id.* (saying a litigation hold is in place)). When asked why Plaintiff could produce some documents and emails related to returns and not others, Mr. Romain responded that he could not explain the discrepancy, and that he is "not aware

of a gap in documentation." (*Id.* at 7).

Another witness offered similarly puzzling testimony. Plaintiff's employee, Megan Lewis, testified during her deposition that she communicated via email or Microsoft Teams with other employees about returns. (Doc. 38-3 at 4–5, 7–8). Her emails, she said, would be "archived [automatically] after six months." (*Id.* at 5). But Ms. Lewis admitted that she never searched her archived emails for communications responsive to Defendant's requests. (*Id.* at 5). Even more, she testified that she did not know if anyone searched her emails for communications about returns. (*Id.*). Therefore, it is unclear whether Ms. Lewis's emails are actually lost to the archives or whether no one looked for them.

Amanda Singh, one of Plaintiff's employees, also testified she did not look for responsive documents. (Doc. 38-4 at 3). As for her team of employees, she said that some documents Plaintiff had produced were clearly pulled "out of archive," (*id.* at 3), and that her team "would have looked" in Plaintiff's electronic system for them (*id.*). Yet she went on to testify that any search would not have included archived emails because Plaintiff's retention policy kept emails only for "180 days." (*Id.* at 4). Seemingly, Ms. Singh was not asked and did not explain how Plaintiff has some emails from 2020 if emails are kept only for 180 days. (*Id.* at 4–5). Nor did she explain how some documents were found in archives, while others were lost. (*Compare* Doc. 38-4 at 3 *with* Doc. 50 at 2 (noting Plaintiff produced some documents related to a single return)).

In sum, while Plaintiff baldly asserts that no other responsive documents exist, the Court does not have to take Plaintiff's word for it. *See, e.g.*, *Phoenix Process Equip. Co. v. Capital Equip. & Trading Corp.*, No. 3:16-cv-24, 2021 WL 1062553, at *4 (W.D. Ky. Mar. 19, 2021) (saying that when a party provides credible evidence that additional documents exist, a party's representation that no documents exist is not sufficient to defeat a motion to compel); *United States v. Carell*, No. 3:09-cv-445, 2011 WL 2078023, at *5–6 (M.D. Tenn. May 26, 2011) (discussing

that while parties cannot produce documents that do not exist, "[s]aying emails do not exist, however, is not the same thing as certifying that a search for such documents has been conducted"). Notably, Plaintiff has not certified in writing that no other documents exist, nor has it explained what efforts it undertook to search for responsive materials. (Doc. 46); *cf. Waskul*, 569 F.Supp.3d at 639 (explaining that if a party cannot find documents after a "reasonable inquiry," they "must say so in a signed response" (citing Fed. R. Civ. P. 26(g)(1)). Given the lack of certification and the inconsistencies discussed above, the Court finds Defendant meets its burden of showing that additional, responsive materials about returns likely exist.

The only question that remains is whether Plaintiff must look for them again. On this point, Plaintiff seemingly contends that another search would be too burdensome or costly. (Doc. 46 at 9 (saying Defendant's document requests seek "to needlessly increase litigation costs")). Once a party objects to a discovery request based on cost or burden, it "must make a 'specific showing, usually . . . by affidavit, of why the demand is unreasonably burdensome.'" *Jones-McNamara v. Holzer Health Sys.*, No. 2:13-cv-616, 2014 WL 3563406, at *1 (S.D. Ohio July 18, 2014) (quoting *McFadden v. Ballard, Spahr, Andrews, & Ingersoll, LLP*, 243 F.R.D. 1, 11 (D. D.C. 2007)). Here, Plaintiff offers nothing to support its argument. *Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 311 (W.D. Tenn. 2008) ("A general statement that discovery is unduly burdensome, without more, is simply not enough to prohibit discovery of otherwise relevant information."). Indeed, Plaintiff does not provide a declaration from counsel, an estimation of costs, or even an explanation of what another search would entail. (Doc. 46). Therefore, Plaintiff has not made the required showing.

Contrary to its arguments, Plaintiff's spreadsheets also do not save it from its discovery obligations. As noted, Plaintiff produced five spreadsheets summarizing certain data or information instead of the source documents themselves. (Doc. 46 at 4). This is not proper under the Federal Rules. To be sure, under Federal Rule of Evidence 1006, "[t]he contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a . . . summary[.]" Even under this rule, the source documents must be

made available for examination by the other party.  Fed. R. Evid. 1006.  What's more, the Sixth Circuit has made clear that "Rule 1006 operates independently of the discovery rules," and a party has "a duty to state when and where the documents underlying its summaries could be viewed." *United States v. Modena*, 302 F.3d 626, 633 (6th Cir. 2002) (citation modified); *see also Geoshack Canada Co. v. Hendriks*, No. 3:19-cv-158, 2020 WL 12189059, at *2 (S.D. Ohio Nov. 24, 2020) ("Rule 1006, therefore, does not override the discovery rules, which in the present circumstances require Plaintiffs to produce their original-source financial data.").  At bottom, Plaintiff must produce the documents it used to create the spreadsheets at issue, as well as any other responsive documents and communications within its possession.

Based upon the record before the Court, it is clear that at least some additional documents related to returns exist.  Therefore, on this issue, Defendant's Motion to Compel is **GRANTED**.  Plaintiff is **ORDERED** to conduct another search for documents and communications responsive to Defendant's discovery requests about returns.  (*See* Doc. 38 at 4 (listing Defendant's discovery requests on these issues)).  Plaintiff must produce all responsive materials **by September 10, 2025**.  If Plaintiff believes certain documents are privileged, it must log the documents and provide that privilege log to Defendant **by September 10, 2025**.  If, after conducting this second search, Plaintiff does not find responsive materials, Plaintiff is **ORDERED** to certify on the docket that no responsive materials exist.  The certification must include a sworn affidavit from counsel detailing what efforts Plaintiff undertook to complete the search.  Plaintiff is **WARNED** that if information is later presented showing that responsive materials do exist, the Court may issue sanctions or prohibit Plaintiff from using undisclosed materials at any eventual trial.  The parties are also **ORDERED** to file a status report **on or before September 19, 2025**, updating the Court on their progress.

2.  *Rule 30(b)(6) Depositions*

Next, Defendant lobs several challenges to the testimony of Plaintiff's Rule 30(b)(6) witnesses.  The Court addresses each topic in turn.

a.  *Standard*

Rule 30(b)(6) of the Federal Rules of Civil Procedure allows a party to depose a representative of a corporate entity.  First, the party seeking the deposition "must describe with reasonable particularity the matters for examination."  Fed. R. Civ. P. 30(b)(6).  After that, the corporate party must designate persons who can "testify on its behalf" and identify "the matters on which each person designated will testify."  *Id.*  Those persons "must testify about information known or reasonably available to the organization," not just their personal knowledge.  *Id.*; *see also Oro BRC4, LLC v. Silvertree Apartments*, Nos. 2:19-cv-4907, 5087, 2021 WL 237667, at *3 (S.D. Ohio June 10, 2021).  In other words, a Rule 30(b)(6) witness "has a duty to reasonably obtain information from corporate documents, current or prior corporate employees, or any other sources reasonably available to the corporation."  *Schnatter v. 247 Grp., LLC*, 343 F.R.D. 325, 331 (W.D. Ky. 2022) (citation modified).  While perfection is not required, a party's witness must be knowledgeable and prepared.  *Wicker v. Lawless*, 278 F.Supp.3d 989, 1000 (S.D. Ohio 2017); *see also Schnatter*, 343 F.R.D. at 331 ("Because Rule 30(b)(6) witnesses testify to corporate knowledge as opposed to personal knowledge, their testimony binds the entity that they are representing.").

"[P]roducing an unprepared Rule 30(b)(6) witness is tantamount to a failure to appear, which may warrant sanction[s] under [Rule 37(d)]."  *In re First Energy Corp. Sec. Litig.*, No. 2:20-cv-3785, 2022 WL 3582366, at *5 (S.D. Ohio Aug. 19, 2022) (quoting *Wicker*, 278 F.Supp.3d at 1000).  The Court can also require the party who produced the unprepared witness to pay the other

party's reasonable expenses, including attorney's fees, "unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(d)(3); *see also In re First Energy Corp. Sec. Litig.*, 2022 WL 3582366, at *5.  At base though, the Court has "wide discretion" in determining the appropriate sanctions.  *See Oro BRC4, LLC*, 2021 WL 2373667, at *7–8 (collecting cases and citing Fed. R. Civ. P. 37).

### b.  Returned Tests

Defendant first raises issues concerning testimony about returned tests.  Defendant served a Rule 30(b)(6) deposition notice for the topic of Plaintiff's "return of Covid Tests to [Defendant], including the specific reason(s) therefore."  (Doc. 38 at 7).  Plaintiff designated Senior Manager of Global Supply Chain Planning, Megan Lewis, to testify on this issue (Doc. 38 at 7), but Defendant says her testimony was inadequate.  (Doc. 38 at 7–9; Doc. 50 at 4–5).

Upon review, the Court agrees.  On the whole, Ms. Lewis provided limited testimony about issues within her personal knowledge.  For instance, Ms. Lewis testified about Plaintiff's electronic system and how the system documented "when product was received to [Plaintiff's] distribution centers."  (Doc. 38-3 at 2; *see also* Doc. 36 at 19–22 (answering questions about a spreadsheet she helped create from exported data from the electronic system)).  Ms. Lewis also said she could provide some testimony about returns involving "excess inventory" or obsolete product.  (Doc. 38-3 at 7–8; *cf. id.* at 7 (saying she couldn't remember "exactly when" or which facilities handled a return related to excess or obsolete product)).

Beyond that, Ms. Lewis lacked knowledge about returns.  Specifically, when asked how Plaintiff would have discovered that tests were damaged, Ms. Lewis offered no information.  (Doc. 38 at 7).  In fact, Ms. Lewis said she did not have a role in Plaintiff's "receipt of tests from [Defendant]."  (Doc. 38-3 at 2).  Nor did she testify about "any quality control measures" Plaintiff

had in place for damaged, returned tests.  (*Id.*; *see also* Doc. 38-3 at 2 (saying she didn't know about quality control inspection processes and that the "[o]perations team within the facilities" would have that information)).  Ms. Lewis also could not answer Defendant's questions about specific returns and the reasons underlying those returns.  (Doc. 38-3 at 4–5, 7–10; *see also id.* at 8 (responding, when asked if there are circumstances she recalled "dealing with a return or a request for return of [Defendant's] product, "For me personally, no")).  For these issues, Ms. Lewis said she needed access to Plaintiff's electronic system or that Defendant would have to question other departments.  (*See, e.g.*, Doc. 36 at 7 (saying that operations teams in distribution centers would have information about damaged products), *id.* (affirming she had no "role relative to [Plaintiff's] receipt of tests from [Defendant]"), 9 (saying she could not recall whether her team was involved in cancelled purchase orders), 11 (saying the distribution centers deal with returns for damaged product), 17 (saying Defendant needed to contact accounts payable); *see also id.* 15, 21, 24 (representing she needed to look at the electronic system to answer Defendant's questions)).

Despite this record, Plaintiff contends Ms. Lewis was prepared and that the spreadsheet produced after her deposition gives Defendant all the information it needs.  (Doc. 46 at 11–12).  Plaintiff also blames Ms. Lewis's limited testimony on its retention policy and Defendant's failure to notice quality control measures as a Rule 30(b)(6) topic.  (*Id.* at 12).

These excuses are unpersuasive.  Ms. Lewis was woefully unprepared.  Her preparation included meetings with Plaintiff's counsel and "[o]ther teammates in [Plaintiff's] organization that" could provide information on processes she could not answer.  (Doc. 36 at 4).  She did not do anything else.  (*Id.* at 4–5).  A few brief conversations fall short of Rule 30(b)(6)'s requirements. *Schnatter*, 343 F.R.D. at 331.

Plus, it is not clear why Plaintiff's retention policy matters, since Ms. Lewis testified that

she did not review any documents for the deposition, even the limited ones Plaintiff has produced. (Doc 36 at 4–5; *see, e.g.*, *id.* at 3 (listing emails, return deduction notifications, a spreadsheet, and other documents used in the deposition)).  Plaintiff complains Defendant did not designate quality control measures as a topic, but Plaintiff misconstrues Defendant's questioning.  Defendant did not ask Ms. Lewis specifics about Plaintiff's quality control policies.  Rather, Defendant asked her whether Plaintiff inspects tests when they are returned to determine if they are damaged.  (Doc. 36 at 7).  Defendant asked that only as a follow-up question when Ms. Lewis said she could not specifically answer Defendant's question about Plaintiff's process "when it would receive tests from [Defendant]." (*Id.*).

Nor does the spreadsheet bolster her lackluster testimony.  Although the document provides some additional information on returns, according to Ms. Lewis, Defendant must still look elsewhere for specific reasons behind returns.  (Doc. 50 at 5 (citing Doc. 36 at 24)).

In sum, while Ms. Lewis could answer some questions within her personal knowledge, she clearly was not prepared to testify about test returns and the specific reasons behind them.  (Doc. 38 at 7).  These matters are at the heart of this case.  The Court finds additional deposition testimony is warranted and **GRANTS** Defendant's Motion to Compel.  *See In re FirstEnergy Corp. Sec. Litig.*, 2022 WL 3582366, at *4 (noting another deposition is a "straightforward remedy" when Rule 30(b)(6) witnesses are unprepared).  Whether Ms. Lewis is an appropriate Rule 30(b)(6) witness on this topic remains to be seen.  As noted in her deposition, multiple people might have the information Defendant seeks.  (*See, e.g.*, Doc. 36 at 7 (discussing that each distribution center or facility has its own operations team, who may have information on receipt of tests), 11 (saying customer service employees may have involvement)).  And the parties may have more clarity on who would be an appropriate witness after Plaintiff supplements its discovery

18

responses regarding returned tests.

The parties are **ORDERED** to confer on appropriate witnesses for these depositions, including whether one or more depositions are necessary.  The parties are further **ORDERED** to provide the Court with the names of the witness(es) and the date(s) of these depositions in their next status report, **due on or before September 19, 2025**.

Lastly, the Court addresses Defendant's request for Plaintiff to pay the costs and expenses of these depositions.  (Doc. 38 at 9).  Ultimately, Ms. Lewis's lack of preparation was not substantially justified, nor does anything in the record support a finding that an award of fees and expenses would be unjust.  *See* Fed. R. Civ. P. 37(d)(3).  As a result, the Court **ORDERS** Plaintiff to pay Defendant's reasonable costs and expenses associated with the additional Rule 30(b)(6) deposition, including court reporter costs, and Defendant's reasonable attorney's fees associated with preparing the relevant portion of this Motion.

### b.    *Deposition Testimony About Retention Issues*

Next is Plaintiff's deposition testimony on the noticed topic of "loss of books and records related to the Covid Tests, [Defendant], and related matters."  (Doc. 38 at 9).  Defendant explains that during the first batch of depositions, Plaintiff did not designate a witness to testify about this topic.  (*Id.* at 10).  Then, when Defendant asked one of Plaintiff's employees whether a litigation hold was put in place, Plaintiff's counsel instructed the witness not to answer.  (*Id.*; *see also* Doc. 37 at 23).  After that deposition, Plaintiff designated another witness, Daniel Romain, to testify further on the topic.

But again, Defendant says Mr. Romain was unprepared.  Specifically, Mr. Romain testified he did not know how Plaintiff's electronic system "works as a record retention system"; that he had no "testimony to offer as to the retention period for any documents," including purchase

orders, invoices, or payment-related documents; and that he could not testify on retention policies for shipping documents. (Doc. 38 at 10; *see also* Doc. 39 at 8–9)). Mr. Romain also testified that while he reviewed a "broader record retention policy" before the deposition, he did not remember many details. (*Id.* at 11 (quoting Doc. 39 at 8)). Likewise, Mr. Romain could not provide specifics on the retention period for any document types. (*Id.* at 12; *see also id.* at 12–13 (quoting Mr. Romain's' testimony that he did not know the time frame for retaining emails)). Even more important, Mr. Romain could not answer when retention periods were put in place or why Plaintiff could produce some documents but not others. (*Id.* at 13–14; *see also id.* at Doc. 39 at 10–11, 17–18).

Plaintiff offers some justifications for his unhelpful testimony, though they are not convincing. First, Plaintiff points to other witnesses' testimony, seemingly to say that Defendant has gotten enough information on this topic. For instance, Plaintiff cites Ms. Lewis's deposition, where she testified that Plaintiff's "standard retention policy" for "the retention of documents" is six months. (Doc. 46 at 13). But Ms. Lewis supplied no details, nor was she designated to provide testimony on this topic. (Doc. 36 at 10, 23 (saying only that emails are archived after six months and that she believes documents are also kept for six months)). Plaintiff also highlights Ms. Singh's testimony. (Doc. 46 at 13). Upon review, all Ms. Singh said was that she believes emails are kept for six months. (Doc. 37 at 23). When Defendant tried to inquire further, Plaintiff instructed her not to answer. (*Id.*).

Plaintiff also contends that Mr. Romain's testimony satisfied Rule 30(b)(6)'s requirements, though Plaintiff does not address any problems with his testimony raised by Defendant. (Doc. 46 at 13). Instead, it appears that Plaintiff argues that since Mr. Romain reviewed the retention policy before his deposition, that was enough. (*Id.* (saying he "provided testimony" and citing Mr.

Romain's statement that he reviewed the policy before his deposition)).  The Court disagrees.  The mere fact that a witness looked at a document does not mean he was adequately prepared.  *See, e.g.*, *Martin Cnty. Coal Corp. v. Universal Underwriters Ins. Servs., Inc.*, No. 08-93-ART, 2010 WL 4629761, at *5 (E.D. Ky. Nov. 8, 2010) ("[T]o the extent that Mr. Hatfield was not familiar with, or could not remember the information in these documents, MCCC was under a duty to make him knowledgeable on the subject.").  This is especially true here, where Mr. Romain could not offer specifics on the retention policy.

In a last-ditch effort, Plaintiff blames Defendant for the inadequacy of Mr. Romain's deposition.  Because Defendant did not introduce the retention policy as an exhibit during Mr. Romain's deposition, Plaintiff says it was Defendant's fault that he could not answer specific questions.  (Doc. 46 at 13).  But it appears that Defendant did not have that document.  When Mr. Romain began to testify about the retention policy, Defendant asked if there is "a written document that lays out [Plaintiff's] broad-based policy for record retention."  (Doc. 39 at 8).  Mr. Romain answered there was, and later, Plaintiff's counsel indicated that Defendant needed to make a "document request" for the policy.  (*Id.* at 9).  So, this argument, too, is meritless.

Plainly, like Ms. Lewis, Mr. Romain was not prepared.  Given Plaintiff's inconsistent document production and representations about which records were maintained and which were lost, the Court also finds that Defendant is entitled to more information on Plaintiff's retention policies.  *See Allergan, Inc. v. Revance Therapeutics, Inc.*, No. 3:23-cv-431, 2025 WL 2182325, at *2 (M.D. Tenn. July 18, 2025) (noting that the Federal Rules allow discovery into information on party's retention of documents and information) (collecting cases); *Ruiz-Bueno v. Scott*, No. 2:12-cv-809, 2013 WL 6055402, at *1–3 (S.D. Ohio Nov. 15, 2013) (discussing when reasonable inquiries into a party's methods of gathering discovery are allowed).

But it is not clear to the Court that another deposition is the solution.  The Court has ordered Plaintiff to conduct another search for responsive communications and documents for Defendant's test return requests.  That search may clarify Plaintiff's retention policies and what documents were maintained.  Additionally, written discovery on this issue could obviate the need for another deposition.

Therefore, Defendant's Motion to Compel additional deposition testimony on Plaintiff's retention policies is **DENIED without prejudice**.  Plaintiff is **ORDERED** to produce to Defendant documents on its retention policy, including the policy document referenced in Mr. Romain's deposition, **by September 10, 2025**.  (Doc. 39 at 9).  Plaintiff is also **ORDERED** to provide to Defendant information on its litigation and retention holds by that date, such as when those holds were put in place.  Although Plaintiff does not need to provide its litigation hold letters at this time, the fact that a litigation or retention hold was enacted and when they were made is not privileged.  *Safelite Grp., Inc. v. Lockridge*, No. 2:21-cv-4558, 2022 WL 17842945, at *4 (S.D. Ohio Dec. 22, 2022) ("[T]he fact of a litigation hold is not privileged or protected by work product."); *Beaudry v. Telecheck Servs., Inc.*, No. 3-07-0842, 2013 WL 12355782, at *2 (M.D. Tenn. Mar. 31, 2013) (noting the court would allow discovery into "when litigation holds were made[,] what the litigation hold required, and to whom the litigation hold was provided").  Once Plaintiff has provided these documents and additional information, the parties are **ORDERED** to confer on any remaining retention issues.

If those conferral efforts are unsuccessful, Defendant may renew its Motion at that time.  Plaintiff is **WARNED** that if the Court grants an additional deposition on this topic in the future, the Court will order Plaintiff to pay Defendant's costs, expenses, and reasonable attorney's fees.

*c.*     *Deposition Testimony About Competitors*

Finally, Defendant seeks to compel testimony on Plaintiff's purchase of COVID-19 tests from competitors.  (Doc. 38 at 14).  According to Defendant, this information is relevant and discoverable because Plaintiff alleges that it returned Defendant's tests because they "were no longer in demand when other vendors received [FDA] clearance and started selling competing tests."  (Doc. 38 at 15 (quoting Plaintiff's representations in the briefing on its Motion for Sanctions); *see also* Doc. 46 at 3 (saying Plaintiff returned tests to Defendant because they were no longer in demand)).

During depositions, Defendant asked Plaintiff's Director of Marking and Product Management, Mr. Chris Huber, about this topic.  (*Id.*; *see also* Doc. 35 at 11).  Plaintiff instructed him not to answer because whether Plaintiff entered into any distribution agreements with other entities was "proprietary" information.  (Doc. 35 at 11).  After Mr. Huber's deposition, Plaintiff said that Mr. Romain could testify secondarily "on the designated topic of [Plaintiff's] purchase, sale, distribution, and/or return of similar covid tests from other manufacturers or sources."  (Doc. 38 at 14).  But, Defendant asserts, Mr. Romain deferred to Mr. Huber, who did not answer questions on this topic.  (*Id.* at 14–15).

In the briefing, Plaintiff stands by its objection made during Mr. Huber's deposition.  (Doc. 46 at 13–14).  Plaintiff also seems to say that Mr. Romain's adequately testified on customer demand for Defendant's competitors' tests.  (*Id.* at 14).  Once more, the Court finds Plaintiff misses the mark.

To start, Plaintiff cites no caselaw in support of its assertion that it can withhold relevant information because that information is proprietary.  (*Id.* at 13–14).  Nor can the Court find any reason to prevent discovery on this issue.  The information Defendant seeks is relevant, since

Plaintiff alleges that it returned tests to Defendant based on changes in demand for Defendant's product.  (*See id.* at 3).  Plaintiff has not provided any evidence or explanation of how the information is confidential or how disclosure "might be harmful," considering the parties have a protective order in place to safeguard any confidential business information disclosed during litigation.  *Outfront Media, LLC v. LeMaster*, No. 7:17-cv-66, 2018 WL 11430816, at *3 (E.D. Ky. June 28, 2018) (saying "there is no absolute privilege that immunizes trade secrets and similar confidential information from discovery" and that parties must show the information is confidential and that "disclosure might be harmful") (collecting cases); (Doc. 13 (parties' protective order)).

The Court also finds Mr. Romain's testimony on this issue insufficient.  Although Mr. Romain testified that several other brands sold tests and that customer demand for these tests changed over time, he could not provide any other helpful information.  (Doc. 39 at 11–12).  He further said the line of questioning was better suited for Mr. Huber, who, as noted, refused to answer Defendant's questions.  (*Id.* at 12).

Again, the answer here is to compel Plaintiff to either reopen Mr. Huber's deposition or designate another witness who can knowledgeably testify.  Therefore, the Court **GRANTS** Defendant's Motion to Compel such a deposition.  The Court also finds that Plaintiff's objection based upon the proprietary nature of the information does not substantially justify its failure to provide a prepared witness.  As noted, Plaintiff provided no caselaw in support of this argument in the briefing.  And Plaintiff rejected Defendant's attempts to designate deposition testimony on this topic as confidential under the parties' protective order.  (Doc. 35 at 11).  Plaintiff offers no other reason why an award of costs and expenses would be unjust.  (Doc. 46 at 13–14).  Therefore, the Court **ORDERS** that Plaintiff must pay the costs and expenses of this deposition, as well as

Defendant's reasonable attorney's fees in preparing the relevant part of this Motion.

    **C.**    **Case Schedule**

    Because of the pending Motions, the Court stayed the discovery and dispositive motion deadlines. (Doc. 40). With the Motions now resolved, the Court resets those deadlines and **LIFTS** the stay. Discovery now closes on **November 18, 2025**, and dispositive motions are due **on or before December 18, 2025**. The Court **WARNS** the parties that **no further extensions will be granted**. The Court expects the parties to work together efficiently and in good faith to meet the deadlines, as the Federal and Local Rules require.

## IV.    CONCLUSION

    For the foregoing reasons, Plaintiff's Motion for Sanctions (Doc. 30) is **DENIED** and Defendant's Motion to Compel (Doc. 38) is **GRANTED in part** and **DENIED without prejudice in part**. Specifically, regarding Defendant's Motion, the Court **ORDERS** the following:

- Plaintiff is **ORDERED** to conduct a search for documents and communications relevant to Defendant's requests about test returns (Doc. 38 at 4), and to produce responsive materials **on or before September 10, 2025**. By that date, if applicable, Plaintiff must produce a privilege log to Defendant for any withheld documents.

- The parties are **ORDERED** to confer on Rule 30(b)(6) witness(es) appropriate for the topic of "return of Covid Tests to [Defendant], including the specific reason(s) therefore." (Doc. 38 at 7). For the additional deposition(s), Plaintiff is **ORDERED** to pay Defendant's reasonable costs and expenses, including court reporter costs, as well as Defendant's reasonable attorney's fees associated with preparing the relevant portion of this Motion.

- Plaintiff is **ORDERED** to produce documents on its retention policy, including the policy document referenced in Mr. Romain's deposition, **on or before September 10, 2025**. (Doc. 39 at 9). By that date, Plaintiff is also **ORDERED** to provide to Defendant information on its litigation and retention holds, such as when those holds were put in place. After Plaintiff has done so, the parties are **ORDERED** to confer on any remaining retention issues. If those conferrals efforts are unsuccessful, Defendant may renew its Motion. In the meantime, Defendant's Motion to Compel a second Rule 30(b)(6) deposition on this topic is **DENIED without prejudice**.

- Plaintiff is **ORDERED** either to reopen Mr. Huber's deposition or to designate another witness who can provide testimony on the topic of Plaintiff's purchase of COVID-19 tests from competitors. (Doc. 38 at 14). Plaintiff is **ORDERED** to pay Defendant's reasonable costs and expenses associated with the deposition, including court reporter costs, as well as Defendant's reasonable attorney's fees associated with preparing the relevant portion of this Motion.

- The parties are **ORDERED** to file a joint status report on discovery **on or before September 19, 2025**. In that status report, the parties must update the Court on (1) Plaintiff's supplemental discovery responses regarding returns; (2) Plaintiff's privilege log, if applicable; (3) Plaintiff's production of documents and information related to its retention policies; and (4) the identities of the Rule 30(b)(6) witnesses and the dates of those depositions. Additionally, the parties are **ORDERED** to indicate whether another mediation session would be productive and, if so, when the parties would like to mediate again.

The Court also **LIFTS** the stay of the discovery and dispositive motion deadlines. (Doc. 40). Discovery is due **on or before November 18, 2025**, and dispositive motions are due **on or before December 18, 2025**. The Court expects no further extensions to these deadlines.

IT IS SO ORDERED.


Date:   August 22, 2025                              /s/ Kimberly A. Jolson
                                                     KIMBERLY A. JOLSON
                                                     UNITED STATES MAGISTRATE JUDGE